OPINION OF THE COURT
Herbert Kramer, J.
Can New York City make a law requiring the sterilization of all dogs that fall into the hands of the dog catcher without offending the Constitution?
When, in mid-March of this year, the city marshal executed an order of eviction, he found plaintiff’s two male Rottweiler puppies and turned them over to the defendant’s shelter. When plaintiff attempted to regain possession of his two dogs, he was informed that his dogs could not be released to him unless they were first neutered. (See Administrative Code of City of NY §§ 17-801—17-804 et seq.)[1]
Plaintiff seeks an order releasing his dogs in their original condition, arguing that the Code provision violates his right to *211 equal protection because it creates an unconstitutional distinction between his pedigreed dogs and registered show breed dogs. Defendant opposes, arguing that the provision meets constitutional muster. Contrary to plaintiffs remaining arguments, if this provision is constitutional, then the provision will appropriately apply to these animals and mandate their sterilization.[2]
“The initial consideration on an equal protection challenge is the appropriate standard of review. In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against an equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for classification.” (Francis S. v Stone, 995 F Supp 368, 384 [SD NY 1998] [internal quotation marks omitted].) A classification must categorize on the basis of an inherently suspect characteristic to warrant some form of heightened review. (Nordlinger v Hahn, 505 US 1 [1992].)
Plaintiffs attempt to avoid the sterilization of his dogs by triggering the neon of an equal protection argument requires that he meet the concomitant burden of proof to support his claim of an equal protection violation. “A statute subject to rational basis scrutiny is presumed to be constitutional, and the party challenging the statute bears the heavy burden of proving that there is no reasonably conceivable state of facts which rationally supports the distinction.” (D’Amico v Crosson, 93 NY2d 29, 32 [1999].) So long as a law does not discriminate against suspect classes of people, a court must accord wide latitude to a legislature’s judgment as to the circumstances warranting the exercise of a city’s police power. Legislation lacking the discriminatory effect against suspect classes shifts the burden of the equal protection inquiry. The requirement to establish a genuine public need for the challenged ordinance does not lie with New York City, but rather it is whether plaintiffs can demonstrate that there is no rational connection between the regulation and the promotion of safety of persons *212 and property.[3] “[T]o succeed on their constitutional claims, plaintiffs must demonstrate that the ordinance is so irrational that it may be branded arbitrary.” (Richmond Boro Gun Club v City of New York, 896 F Supp 276, 283 [ED NY 1995] [internal quotation marks omitted].)
Unsurprisingly, plaintiff has failed to demonstrate the arbitrariness of this provision. “Property in dogs is of an imperfect or qualified nature and they may be subjected to peculiar and drastic police regulations by the state without depriving their owners of any federal right.” (Nicchia v People of State of N.Y., 254 US 228, 230 [1920].) Dogs hold their lives at the will of the Legislature, are subject to the police power of the state, and “might be destroyed or otherwise dealt with, as in the judgment of the legislature is necessary for the protection of its citizens.” (Sentell v New Orleans & C.R. Co., 166 US 698, 704 [1897].)
Here, the defendant seeks only to neuter these animals. However, legislatively mandated actions of an even more drastic nature have been endorsed by our courts. Thus, a statute authorizing the destruction of all untagged dogs found outside their enclosures, even with notice of their ownership, was held to be a valid police regulation. (Id.; Blair v Du Mond, 280 App Div 1021 [3d Dept 1952] [authorizing peace officer to kill on sight any dog at large in violation of a curfew order].)
The Constitution as an instrument of government informs the duties of the coordinate branches of government. The executive branch, through its various agencies, is entrusted to enforce the laws given to life through the political voice of the people as translated by the Legislature. “[T]he courts are not only ill-advised and ill-equipped to intrude upon the legislative and agency decisionmaking process of a particular municipality, but prohibited from doing so by longstanding judicial interpretation of the Due Process and Equal Protection Clauses of *213 the Constitution.” (New York City Friends of Ferrets v City of New York, 876 F Supp 529, 540 [SD NY 1995].) It is unquestionably true that we owe much to our canine friends who unconditionally and unselfishly love, serve and protect us; however, we must balance that debt against the duty owed to the public to ensure its safety. Such balancing is peculiarly the function of the governmental agency concerned with the safety of the public and the branch of government responsible for enacting responsive legislation.
The plaintiffs motion is denied.

. Section 17-804 (a) of the Administrative Code mandates that shelters for homeless animals such as the Center for Animal Care and Control, that are required to have a permit issued pursuant to subdivision (b) of section *211 161.09 of the New York City Health Code, may not release a dog to anyone including the owner of the dog unless the dog has been sterilized. There are three exceptions to this sterilization requirement: (1) the procedure would endanger the life of the dog, (2) the dog has a breed ring show record from a recognized registry association, and (3) the dog is a guide, hearing, service or police work dog.

. The court thanks Ms. Haley Greenberg of Greenberg & Merola, LLP, New York, for the amicus brief she submitted to assist the court in deciding this matter.

. Nonetheless the legislative findings made in connection with the provision at issue do make out a case for a genuine public need: “The City Council hereby finds that New York City is experiencing a serious overpopulation of unwanted dogs and cats. This is a matter of serious concern affecting the public health, safety and welfare. The Center for Animal Care and Control, which operates animal shelters under contract with the City’s Department of Health, estimates that 67,000 unwanted, stray or abandoned dogs and cats entered its facilities in 1998. Of these animals, approximately seventy percent were not spayed or neutered. While wandering the City’s streets, homeless dogs and cats reproduce at alarming rates, exacerbating a potentially unhealthy and dangerous situation. As a result of this situation, dog packs have formed in some areas, increasing numbers of individuals and animals are at risk for rabies, and many homeless animals have become the victims of vehicular accidents. These animals also suffer from lack of food and water and exposure to the elements.” (Administrative Code § 17-801.)